United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH CLEVES,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | No. C 09-03624 WHA<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

In this social security appeal, the Court finds that the administrative law judge committed legal error by not adequately explaining his evaluation of the combined effects of impairments under step three of the statutory evaluation process. Accordingly, plaintiff's motion for summary judgment is **GRANTED**. Defendant's cross-motion for summary judgment is **DENIED**.

## STATEMENT

Plaintiff Elizabeth Cleves filed an application for disability insurance benefits and SSI disability benefits under Title II and Title XVI of the Social Security Act. After plaintiff's application was denied she appealed and had a hearing before the ALJ. The ALJ went through the statutory five-step evaluation process and determined that plaintiff was not disabled. Plaintiff then appealed to the Appeals Council and was denied review. She is now seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. 405(g).

Plaintiff alleges that she satisfies Listing 1.04A and that the ALJ did not adequately address equivalence in step three of the sequential evaluation process. Listing 1.04A stated:

> 1.04:  Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . .

The ALJ, in his step-three analysis stated the following with regards to 1.04A:

> Although the claimant's impairments, both individually and in combination, are severe, they do not meet the specific criteria of any of the Listings. The claimant shows none of the nerve root compromise required by Listing 1.04A or lumbar spinal stenosis required by Listing 1.04C., [sic] or any inability to ambulate effectively under Listing 1.02 (AR 19).

Following this conclusory paragraph the ALJ then proceeded to the fourth step of the sequential evaluation process where he determined the "Residual Functional Capacity" of the plaintiff. Here, the ALJ went into a six-page single-spaced discussion of all of the defendant's medical records in chronological order. The following portions of this six-page discussion are of particular relevance to this order. The ALJ first went over Dr. Stephen Dell's September 2003 diagnosis. Dr. Dell, who was a consultative neurosurgeon, did an "EMG/NCV testing" on the plaintiff that "showed mild to moderate median nerve compression right greater than left, deep to the transverse carpal ligament and consistent with carpal tunnel syndrome." The ALJ then went over a November 2003 report prepared by Dr. John Devor, who was a compensation examiner. This report found that plaintiff could be "suffering from a 'double crushed syndrome,' in which she suffered from a prominent peripheral neuropathy *and* [that] her cervical nerve roots were compromised proximally on the right." The ALJ also noted that Dr. Devor found "intermittent slight right carpal tunnel symptoms . . . [and] infrequent slight left carpal tunnel symptoms." Next, the ALJ discussed the findings of the claimant's chiropractic doctor — who he discredited — and a couple of other medical opinions that are not relevant to this order before discussing

2

1  plaintiff's February 2006 EMG/NCV testing. The ALJ observed that the 2006 EMG/NCV testing
2  "revealed focal median nerve conduction abnormalities in the right wrist, consistent with carpal
3  tunnel syndrome [which had] increased significantly since the prior study."
4       Lastly, the ALJ went over Dr. Fredric Newton's October 2006 diagnosis. The ALJ stated
5  that he "heavily relied on" Dr. Newton's opinion because he was able to go over all the previous
6  medical records, he was the agreed upon medical examiner, and had done the most recent
7  examination. The ALJ noted that Dr. Newton did not believe the February 2006 EMG/NCV
8  testing results evidenced a serious condition and Dr. Newton "characterized the opinions in the
9  claimant's case as an 'interesting mix' showing a certain amount of diagnostic consternation.'"
10 Based upon the context of where Dr. Newton stated "interesting mix" and "diagnostic
11 consternation," it appears that he was qualifying his additional testing with the fact that there
12 were differing medical opinions. *See* (AR 20F at 15) ("interesting mix of [medical] opinions
13 flowed from the two QME assessments . . . [and] . . . in view of all of the diagnostic
14 consternation, I thought it prudent to broaden the objective database"). Finally, the ALJ went
15 over Dr. Newton's findings, which included the opinion that plaintiff had "some nerve root
16 irritation" that coexisted in "double crushed fashion with a likely negative carpal tunnel
17 syndrome." At the end of his six-page summary, the ALJ made several findings regarding
18 plaintiff's "Residual Functional Capacity" and moved on to the rest of the evaluation process.

**ANALYSIS**

20      In step three of the sequential evaluation process, the ALJ must consider the medical
21 severity of the claimant's impairments. "If the claimant has an impairment, or a combination of
22 impairments, that matches or is substantially equivalent to an impairment in the listing of
23 impairments, the applicant is disabled per se." 20 C.F.R. 404.1520. "In determining whether a
24 claimant equals a Listing under step three of the [claimant's] disability evaluation process, the
25 ALJ must explain adequately his evaluation of alternative tests and the combined effects of the
26 impairments . . . ". *Marcia v. Sullivan*, 900 F.2d 172 (9th Cir. 1990) (citation omitted). *Marcia*,
27 however, "simply requires an ALJ to discuss and evaluate the evidence that supports his or her
28 conclusion; it does not specify that the ALJ must do so under the heading 'Findings.'" *Lewis v.*

3

*Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (upholding the ALJ's decision when he made evidentiary findings in support of his conclusion in step three).

The ALJ in the instant case did not satisfy the requirements of *Marcia* or *Lewis*. In *Marcia,* the court found the ALJ's statement "[t]he claimant has failed to provide evidence of medically determinable impairments that meet or equal the Listings to Subpart P of Regulation 4 or the duration requirements of the Act . . ." an inadequate evaluation of step three of the disability evaluation process. Similarly, in the instant case, the ALJ concluded that plaintiff's ailments did not meet elements of the Listings without providing an explanation.

In *Lewis*, the court found the ALJ's conclusory statement in step three *sufficient* when it was coupled by a finding that precluded the plaintiff from establishing step three. Specifically, the ALJ in *Lewis* made the conclusory statement that the plaintiff's epilepsy "did not meet or equal an impairment listed." In another part of his opinion, however, the ALJ found that the plaintiff "did not comply with his prescribed treatment." The latter finding by the ALJ clearly precluded the plaintiff from establishing the Listing at issue because the Listing *required* the plaintiff's epilepsy to "persist despite the fact that the individual [was] following prescribed anticonvulsive treatment." Unlike in *Lewis,* the ALJ in the instant case did not make any findings that would preclude plaintiff from establishing a Listing, and in fact, stated evidence that contradicted his own conclusion. In step three the ALJ stated, "claimant *shows none of the nerve root compromise* required by Listing 1.04A . . ."; yet, in his determination of the residual functional capacity, the ALJ referenced Dr. Devor's opinion, which stated that the claimant "*cervical nerve roots were compromised*."

The Court also realizes that the ALJ's order might have contained a typographical error where the ALJ stated that the plaintiff "shows none of the nerve root *compromise*." Given the wording of Listing 1.04 which states "compromise of a nerve root" for a general requirement of Listing 1.04 and then "nerve root compression" as a requirement under subpart A of Listing 1.04, the ALJ likely meant "compression" instead of "compromise." This is exemplified by the fact that if plaintiff did not show any compromise of a nerve root, the ALJ's reasoning to eliminate

4

1.04C would be superfluous. Without a compromise of a nerve root, *everything* under 1.04 — including subpart A and C — is precluded, not just 1.04A.

Even assuming the ALJ meant "compression" rather than "compromise" as discussed above, the ALJ's findings still contradicts his conclusion. The ALJ referenced Dr. Newton's findings — which the ALJ "heavily relied on" — that plaintiff had "nerve root irritation" which "'coexist' in a 'double crushed fashion.'" The ALJ also pointed out Dr. Dell's EMG/NCV testing that "showed mild to moderate median nerve compression right greater than left." Although the ALJ specifically states that he gives more weight to Dr. Newton over plaintiff's doctors, the ALJ never wholly discredits or disagrees with any of the above findings. The ALJ's evaluation of the evidence, therefore, is not in support of his conclusion in step three, and under *Marcia*, the step-three statement is not a sufficient explanation of the combined effects of plaintiff's impairments.

None of defendant's arguments addresses the above deficiencies. Defendant argues that plaintiff could not meet the requirements of Listing 1.04A because plaintiff cannot substitute buckling of the legs, as discussed in her testimony, in place of the motor-loss element. The ALJ, however, did not address plaintiff's buckling of the legs or motor loss in his opinion. This reaffirms the conclusion that the ALJ did not adequately discuss or evaluate the evidence in support of his step-three finding.

Defendant makes three other arguments in support of affirming the ALJ's decision that fail: (1) the ALJ has substantial evidence in support of his findings; (2) the signatures of two state agency physicians signing the Disability Determination Transmittal forms was sufficient to show that plaintiff was not disabled;* and (3) the ALJ is the final arbiter to uncertain evidence regarding the elements in determining disability. None of these arguments excuse the requirement that the ALJ must *support* his evaluation of the combined effects of the impairments either in step three or somewhere else.

---

\* This only applies to the initial and reconsideration levels of the administrative process. *See* S.S.R. 95-6p.

5

**CONCLUSION**

For the reasons stated above, this case is **REMANDED**. The Commissioner of Social Security is to properly consider plaintiff's impairments under step three of the evaluation process. Plaintiff's motion for summary judgment is **GRANTED**. Defendant's cross-motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 24, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE